IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SEGMENT CONSULTING MANAGEMENT, LTD., a British Columbia, Canada Company; and LIGHTHOUSE ENTERPRISES, INC., a Barbados Company,<br><br>Plaintiffs,<br><br>v.<br><br>STREAMLINE MANUFACTURING, LLC, a Utah Limited Liability Company; JOHN A. DURLING, an Individual; PATRICK A. CALL, an Individual; MATTHEW A. ASAY, an Individual; BIG BOSS WHOLESALE AND NOVELTIES LLC, a Texas Limited Liability Company; and ZEESHAN SYED, an Individual<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS<br><br><br>Case No. 2:19-CV-933 TS–EJF<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion for Partial Dismissal of Counterclaims ("Motion") by Segment Consulting Management, LTD. et al ("Segment"). For the reasons discussed below, the Court will grant in part and deny in part the Motion.

I. BACKGROUND

This factual background favors Streamline, the non-moving party.[1] Segment owns the intellectual property of the botanical product VivaZen.[2] Streamline Manufacturing, LLC ("Streamline") and Segment began doing business together in late 2018 or early 2019 when Segment asked Streamline to take raw ingredients purchased by Segment, mix the ingredients,

---

[1] *See Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

[2] *See* Docket No. 32-3 ¶ 1.

bottle the resulting mix, and label the bottles to produce a finished VivaZen product Segment could ship to its distributors.³ Streamline began this process and delivered several million units of VivaZen to Segment.⁴ Eventually, Segment and Streamline's relationship deteriorated when the parties disputed the quantity of VivaZen units billed and monies owed.⁵

Not all particulars of the parties' dispute are relevant to determine this Motion. Segment's actions following the fallout, however, are particularly relevant. Specifically, Segment allegedly provided wire payment confirmations for wires that never came through to Streamline's bank accounts.⁶ Additionally, Segment kept and sold product that Streamline manufactured, but for which Streamline did not receive payment. Streamline argues that these actions constitute a pattern of unlawful activity and wire fraud.⁷ Following the parties' falling out, Segment's attorney sent letters to industry wholesalers, distributors, and financial institutions.⁸ These letters explained the parties' falling out and requested that the wholesalers and distributors cease selling any VivaZen purchased from Streamline.⁹ The financial institution letters informed those institutions of an alleged security interest in Streamline's assets.¹⁰ Streamline claims that these letters were defamatory, trade libel, and intentionally interfered with economic relations.¹¹

---

³ *See* Docket No. 15 ¶¶ 8–10.
⁴ *See id.* ¶ 40.
⁵ *See, e.g.*, Docket No. 32-3 ¶¶ 49–52; Docket No. 15 ¶¶ 21–23.
⁶ *See, e.g.*, Docket No. 15 ¶¶ 106, 118.
⁷ *See generally id.* ¶¶ 101–24.
⁸ *See id.* ¶¶ 136–38.
⁹ *See id.*
¹⁰ *See id.* ¶ 138.
¹¹ *See generally id.* ¶¶ 134–74.

Finally, Streamline alleges that Segment abused the judicial process by filing claims against Streamline's members for voidable transfer without a factual basis.[12]

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(d) states that where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[13] Segment, in support of its Motion, attaches a series of letters as exhibits.[14] Streamline argues that these letters are outside of the pleadings and must be disregarded or the Motion must be converted to one for summary judgment.[15] This is contrary to Tenth Circuit law. Indeed, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[16] Here, Streamline's counterclaim directly refers to the letters, and they are central to their trade libel and defamation claims.[17] Streamline also makes no argument challenging the letters' authenticity. Therefore, the Court will not convert the Motion to one for summary judgment.

Streamline argues that dismissal is warranted only if it cannot state any set of facts to support its claim.[18] This "any set of facts" standard has been disavowed by the Supreme Court and replaced by *Twombly*'s factual enhancement standard.[19] In considering a motion to dismiss

---

[12] *Id.* ¶¶ 127–29.
[13] FED. R. CIV. P. 12(d).
[14] *See generally* Docket No. 29-1.
[15] *See* Docket No. 37, at 2–3.
[16] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).
[17] *See* Docket No. 15 ¶¶ 136–37, 150–52.
[18] *See* Docket No. 37, at 3–4.
[19] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007).

for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[20] Pleadings must provide "enough facts to state a claim to relief that is plausible on its face,"[21] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[22] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[24]

III. ANALYSIS

Segment moves to dismiss six of Streamline's counterclaims. The law for each of these claims varies, and each will be examined in turn.

A. Utah Pattern of Unlawful Activity under Utah Code § 76-10-1601 to -1609

Segment argues that Streamline's Utah Pattern of Unlawful Activity ("UPUA") claim is deficient because it was not pleaded with particularity.[25] Segment contends that Streamline does not specify what Segment's illegal acts were, who committed them, when or where exactly they

---

[20] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[21] *Twombly*, 550 U.S. at 570.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[24] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[25] *See* Docket No. 29, at 3.

4

were committed, or any other circumstances.[26] Streamline argues that Segment interprets Utah law on particularity too narrowly.[27] Under Streamline's reading of Utah law, particularity is satisfied so long as the pleadings provide "'a sufficiently clear and specific description of the facts underlying the' claims."[28] Streamline asserts that its pleadings satisfy this requirement.

To succeed on a UPUA claim a claimant must show that "(1) the defendant engaged in a pattern of unlawful activity and (2) the defendant is involved in an enterprise."[29] Utah law also requires that a party pleading a UPUA violation do so with particularity.[30] This means that the pleadings must demonstrate that the alleged activity would be illegal in Utah and would fall under UPUA's statutory provisions.[31] The pleadings must also set forth facts demonstrating "not only unlawful conduct, but a pattern of unlawful activity as opposed to an isolated incident."[32] Particularity may be established by pleading "who, when, where, or what has happened in furtherance of [the] scheme."[33]

Streamline's pleadings satisfy Utah's particularity requirement even under Segment's more stringent particularity standard. Streamline alleges that Segment violated UPUA by:

- Committing multiple and separate acts of theft "by retaining product manufactured by Streamline without paying for the same, which therefore lawfully belong to Streamline."[34]

---

[26] *Id.*

[27] *See* Docket No. 37, at 4.

[28] *Id.* (quoting *The Armer Texas Tr. v. Brazell*, 397 P.3d 604, 609 (Utah Ct. App. 2017)).

[29] *Holbrook v. Master Prot. Corp.*, 883 P.2d 295, 302 (Utah Ct. App. 1994).

[30] *See* Utah Code § 76-10-1605(7); *Holbrook*, 883 P.2d at 302.

[31] *Holbrook*, 883 P.2d at 302.

[32] *Id.*

[33] *Carlton v. Brown*, 323 P.3d 571, 583 (Utah 2014).

[34] Docket No. 15 ¶ 104.

- Committing multiple and separate acts of theft by deception "by submitting multiple confirmations of wire payments to obtain product, and by cancelling the same immediately after delivery on no less than three separate occasions."[35]
- Committing multiple and separate acts of communications fraud "by submitting multiple confirmations of wire payments to obtain product coupled with text message correspondence indicating the same, and by cancelling the same immediately after delivery on no less than three separate occasions."[36]
- Committing multiple and separate acts of false or inconsistent statements under penalty of perjury when it falsely declared "the number of manufacturers making VivaZen, its inability to sell VivaZen without capturing Streamline's manufactured product, and Segment's overall state of financial harm, which was contradicted in each respect by its letter to wholesalers and distributors in the industry on November 19, 2019."[37]
- Committing multiple and separate acts of written false statements under penalty of perjury when it falsely wrote "the number of manufacturers making VivaZen, its inability to sell VivaZen without capturing Streamline's manufactured product, and Segment's overall state of financial harm, which was contradicted in each respect by its letter to wholesalers and distributors in the industry on November 19, 2019."[38]

These pleadings satisfy UPUA's particularity requirement because the specific facts set forth above demonstrate unlawful activity in Utah and a pattern of activities by Segment against Streamline. Although the pleadings do not allege every factual detail of the UPUA claim, Utah law does not require them to do so. It is sufficient at this stage for Streamline to allege that Segment (the who) committed multiple unlawful acts as outlined above (the what), from July 2019 to the present (the when) [39] through text messages, phone calls, letters, and wire confirmations (the where). Streamline's UPUA claim will not be dismissed.

B. Communications Fraud per Utah Code § 76-10-1802

Streamline's communications fraud claim will be dismissed because Utah law does not permit a civil communications fraud claim. There are two Utah Code sections that deal with

---

[35] *Id.* ¶ 105.

[36] *Id.* ¶ 106.

[37] *Id.* ¶ 107.

[38] *Id.* ¶ 108.

[39] *Id.* ¶ 24.

communications fraud and misrepresentations. The first, Utah Code § 76-10-1801, is a criminal statute that prohibits individuals from defrauding through communicative means. This section makes no reference to any civil action. The second, Utah Code § 76-10-1802, prohibits individuals from misrepresenting their identity to communicative recipients. This section permits both criminal and civil action enforcement.[40]

Here, Streamline attempts an amazing feat; it cherry picks provisions of the Utah code that favor its position while ignoring others. Specifically, Streamline argues that a provision authorizing a civil suit under Section 1802 applies to its communications fraud claim under Section 1801 despite Section 1802 expressly stating that civil enforcement is limited to "a violation of *this* section."[41] Streamline has not apprised the Court of any canons of construction or made other arguments for why Section 1802's provisions are applicable to Section 1801. Instead, Streamline plays fast and loose with its citations to support its assertions. For example, Streamline states that a civil action is proper for all provisions of Utah Code Title 76 Chapter 10,[42] but it supports this proposition by citing specifically to Section 1802(6).[43] Next, Streamline states that Section 1802 makes it unlawful to defraud another through communicative means,[44] but it instead quotes from Section 1801.[45] This claim will be dismissed.

---

[40] *See* Utah Code § 76-10-1802(6).

[41] *Id.* (emphasis added).

[42] Docket No. 37, at 8.

[43] *See id.*

[44] *See id.*

[45] *See id.*

7

C. Abuse of Process

An abuse of legal process is where the process is employed for some unlawful object, not the purpose intended by law.[46] "[T]o establish a claim for abuse of process, a claimant must demonstrate first, an ulterior purpose; [and] second, an act in the use of the process not proper in the regular prosecution of the proceedings."[47] "To satisfy the 'willful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[48] Legal process with a bad motive is not enough. A party must allege "a corroborating act of a nature other than legal process . . . ."[49] If legal process is used for its proper and intended purpose, but it has collateral effects, there is no abuse of process.[50] Utah law does not allow abuse of process claims "when [an] action is filed to intimidate and embarrass the defendant knowing there is no entitlement to recover the full amount of damages sought."[51] Likewise, "complicating the course of litigation and increasing the costs of defense do not qualify as a collateral advantage or ulterior purpose" for abuse of process claims.[52] In short, a claimant must allege some object they wish to gain outside of the proceedings itself or their claim fails.[53]

---

[46] *Kool v. Lee*, 134 P. 906, 909 (Utah 1913).

[47] *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 341 (Utah 2005) (internal quotation marks and citation omitted) (second alteration in original).

[48] *Hatch v. Davis*, 147 P.3d 383, 390 (Utah 2006).

[49] *Id.*

[50] *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974).

[51] *Puttuck v. Gendron*, 199 P.3d 971, 977 (Utah Ct. App. 2008) (internal quotation marks and citation omitted).

[52] *Id.*

[53] *Id.*

Streamline's abuse of process claim arises from Segment's voidable transfer claim against Streamline's members.[54] Streamline alleges abuse of process because Segment brought its voidable transfer claim

> without any lawful or factual basis whatsoever, and without any diligence to ascertain the truth of such allegations . . . to harm, embarrass, and harass Mssrs. Durling, Call, and Asay without any excuse or justification . . . in an improper manner to obtain a collateral objective . . . with malice, and/or with complete disregard to the truth or veracity of such allegations.[55]

Segment argues that Streamline's claim fails because it makes no "allegation[s] of an ulterior purpose, much less an independent willful act that corroborates that purpose."[56] Streamline argues that its pleadings allege an ulterior motive and willful act and that Segment's argument is simply a justification of its baseless voidable transfer claim.[57]

Streamline's abuse of process claims fails for two reasons. First, it has not alleged an ulterior purpose that has not been rejected by Utah law. Specifically, Streamline alleges that Segment's ulterior purpose in bringing the voidable transfer claim is to "harm, embarrass, and harass Mssrs. Durling, Call, and Asay . . . ."[58] This is not enough because, as stated in *Puttuck*, "[t]here is no abuse of process when [an] action is filed to intimidate and embarrass the defendant . . . ."[59] Second, Streamline points to no conduct corroborating an improper purpose that is independent of these proceedings. For these reasons, this claim will be dismissed.

---

[54] *See* Docket No. 32-3 ¶¶ 178–84.

[55] *See* Docket No. 15 ¶¶ 128–31.

[56] *See* Docket No. 29, at 5.

[57] *See* Docket No. 37, at 10.

[58] *See* Docket No. 15 ¶ 129; Docket No. 37, at 10.

[59] *Puttuck*, 199 P.3d at 977 (internal quotation marks and citations omitted); *see also Keller v. Ray, Quinney & Nebeker*, 896 F. Supp. 1563, 1572 (D. Utah 1995) ("It is recognized that 'even a pure spite motive is not sufficient [to state a claim for abuse of process] where

D. Defamation and Trade Libel

"A prima facie defamation case must demonstrate that (1) the defendant published the statements [in print or orally]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages."[60]

Segment attacks Streamline's defamation and trade libel claims because any allegedly defamatory statements are privileged and Streamline's allegations regarding privilege are deficient. In Utah, "false and defamatory statements are not actionable if they are protected by a legal privilege."[61] Utah common law recognizes that the "judicial proceeding privilege immunizes certain statements that are made during a judicial proceeding from defamation claims."[62] To establish immunity under this privilege, the allegedly defamatory statements must be: "(1) made during or in the course of a judicial proceedings; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel."[63]

In *Krouse v. Bower*, Utah's Supreme Court explained how broadly Utah interprets "judicial proceedings." In *Krouse*, a homeowners' association intended to expand a condominium complex to include new housing units, but those intentions were opposed by two

---

process is used only to accomplish the result for which it was created.") (alteration in original) (internal quotation marks and citation omitted).

[60] *Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009) (alteration in original) (internal quotation marks omitted).

[61] *Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007).

[62] *Id.*

[63] *Id.* (quotation marks omitted).

10

residents.[64] The residents hired an attorney who sent a demand letter to the owners' association threating suit if it did not abandon its expansion plan, and copies of the letter were sent to individual members of the association.[65] The homeowners' association alleged that these letters were defamatory because the letters accused the association of violating their fiduciary duties and committing fraud.[66] The residents argued that the letters were protected by the judicial proceeding privileged, but the association challenged this by arguing that the letters were not made in the course of a legal proceeding, nor did they refer to a legal proceeding, because a lawsuit had not yet been filed when the letter was published.[67] The Court agreed with the residents and explained that the letters were made during or in the course of a judicial proceeding and thus the judicial proceeding privilege "extends to statements made prior to the filing of a lawsuit."[68] The Court further concluded that the letters had some reference to the subject matter of the proceeding because the alleged defamatory statements and the subject matter of the proceedings were intertwined.[69]

Here, Streamline's defamation claim arises from certain letters that Segment's attorney sent to industry wholesalers, distributors and financial institutions.[70] Segment claims that these letters were made during a judicial proceeding and are therefore privileged, but Streamline, like

---

[64] 20 P.3d 895, 897 (Utah 2001).

[65] *Id.*

[66] *Id.* at 898.

[67] *Id.*

[68] *Id.* at 899; *see also* Restatement (Second) of Torts § 587 (1977) ("A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceedings, or in the institution of or during the course and as a part of, a judicial participation in which he participates, if the matter has some relation to the proceeding.").

[69] *Krouse*, 20 P.3d at 900.

[70] Docket No. 15 ¶ 136.

11

the association in *Krouse*, argues that the letters "relate to no proceeding" whatsoever.[71] The Court concludes that the letters are privileged because they relate to these proceedings and fall under Utah's broad interpretation of judicial proceedings.

This case was initiated in the District Court of Utah on October 28, 2019.[72] All letters at issue were sent after this case began and bear some relation to the proceedings. For example, two letters, dated November 8, 2019, were sent to Big Boss Wholesale and Zeeshan Syed, who are named defendants in this case.[73] Those letters discuss Big Boss allegedly purchasing VivaZen and requesting that it return the product to Segment or legal action would be initiated against them.[74] These letters, like those in *Krouse*, were certainly made during a judicial proceeding and relate to this case's subject matter. One letter, dated November 12, 2019, was sent to Lab Stream Partners, LLC, and threatened legal action if Lab Stream Partners purchased VivaZen from Streamline.[75] This letter is also privileged because it relates to these proceedings. Two letters dated November 13, 2019, were sent to Zion's Bancorporation and Wells Fargo Bank, Streamline's financial institutions.[76] These letters discuss Segment's suit with Streamline and inform the banks of a security interest Segment allegedly has in Streamline's assets that is higher priority than the bank's interest. These letters are also privileged as they relate to Segment's claims. Two letters dated December 9, 2019, were sent to Linse Lighters, Inc. These letters discuss this case and order Linse Lighters to cease selling VivaZen purchased from Streamline

---

[71] Docket No. 37, at 11.

[72] *See* Docket No. 2-2, at 3.

[73] *See* Docket No. 29-1, at 2–5.

[74] *Id.*

[75] *See id.* at 6–7.

[76] *See id.* at 8–11.

pursuant to an injunction issued by the Utah District Court.[77] These too are related to these proceedings and are therefore privileged.

There is one letter referenced in the counterclaim that the parties appear to agree is not privileged.[78] This letter, dated November 19, 2019, was sent by Segment to its wholesalers and distributors.[79] Streamline alleges that this letter was defamatory because it "undermine[d] Streamline's lawful attempts to mitigate its damages by unilaterally attempting to change aspects of the VivaZen product . . . stating true VivaZen would have a different label, bottle, and color compared to what Streamline was reselling to mitigate its damages," it "claimed that any attempt to trade on any other VivaZen is unlawful, which it is not," and "Segment knew such statements were false."[80] Streamline, in its opposition, also alleges multiple false statements contained in the letter.[81] The Court, however, is not required to accept any allegations made in Segment's opposition because they do not appear in the Complaint.[82] Based solely on the complaint, Streamline makes no allegations—besides the conclusory allegation that such statements were false—that the November 19, 2019, letter contains falsities.

Streamline has not sufficiently pled that Segment's allegedly defamatory statements were not privileged, and it has not sufficiently alleged that the November 19 letter contains false statements. For these reasons, this claim will be dismissed without prejudice. Streamline may

---

[77] *See id.* at 12-16.

[78] *See* Docket No. 29, at 7 n.21; Docket No. 37, at 10.

[79] *See* Docket No. 17-1.

[80] *See* Docket No. 15 ¶¶ 139–43.

[81] *See* Docket No. 37, at 12.

[82] *See Jensen v. Gale*, 1:13-CV-30 DN, 2014 WL 7246948, at * 2 (D. Utah Dec. 18, 2014).

seek leave in accordance with Federal Rule of Civil Procedure 15 to amend its complaint to include those allegations outlined in its opposition.

E. Tortious Interference with Economic Relations

To state a claim for tortious interference with economic relations, a claimant must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff."[83] In *C.R. England v. Swift Transp. Co.*, the Utah Supreme Court determined that "improper means" is action that is contrary to a statute, regulation, common law rule, or an established standard of a trade or profession.[84] In other words, a tortious interference with economic relations claim must be premised on other unlawful conduct or conduct contrary to an established standard of a trade or profession.

Streamline premises its tortious interference claim on the same allegations as its defamation and trade libel claims.[85] For the reasons previously discussed, Streamline fails to state a claim for defamation and trade libel, and therefore these claims cannot satisfy the improper means requirement for a tortious interference claim. Streamline alleges no other improper means taken by Segment to support its tortious interference claim and thus this claim will be dismissed without prejudice so Streamline may seek leave in accordance with Federal Rule of Civil Procedure 15 to amend its complaint to include allegations outlined in its opposition.

---

[83] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015).
[84] 437 P.3d 343, 355 (Utah 2019).
[85] *Compare* Docket No. 15 ¶¶ 148–56, *with id.* ¶¶ 161–70.

F. Amended Pleadings

Streamline argues that if the Court concludes that it failed to state a claim it should, as an alternate form of relief, have the opportunity to amend its Counterclaim.[86] Streamline has not, however, filed any motion for leave to amend. Generally, once a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[87] Federal Rule of Civil Procedure 15(a) specifies that "[t]he court should freely give leave when justice so requires."[88] The Supreme Court has indicated that leave sought should be given unless "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment"[89] is present. The party seeking leave to amend outside of a hearing or trial must do so by written motion in accordance with Rule 7(b)(1).[90] Such a request cannot be simply tacked onto other pleadings.[91] The Tenth Circuit has regularly found that "[s]uch cursory requests for leave to amend are insufficient."[92] If Streamline wishes to amend its counterclaim, it should file a separate motion seeking leave to amend under Federal Rule of Civil Procedure 15.

---

[86] *See, e.g.*, Docket No. 37, at 8.

[87] FED. R. CIV. P. 15(a)(2).

[88] *Id.*

[89] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[90] *See* FED. R. CIV. P. 7(b)(1).

[91] *See* DUCivR 7-1(b)(1)(A) (requiring all motions to be filed in a separate document).

[92] *Bangerter v. Roach*, 467 F. App'x 787, 789 (10th Cir. 2012); *see Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) ("[Plaintiff] did not file a written motion for leave to amend; instead, in her opposition to the motion to dismiss, she merely suggested she should be allowed to amend if the court concluded her pleadings were infirm. This is insufficient"); *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989) (affirming dismissal of plaintiff's complaint for failure to state a claim and finding

## IV. CONCLUSION

It is therefore

ORDERED that Segment's Motion (Docket No. 29) regarding Streamline's:

1) pattern of unlawful activity claim is DENIED;
2) communications fraud and abuse of process claims is GRANTED, and those claims are dismissed with prejudice; and
3) defamation, trade libel, and intentional interference with economic relations claims is GRANTED, and those claims are dismissed without prejudice.

DATED February 25, 2020

BY THE COURT:

Ted Stewart
United States District Judge

---

plaintiff's request to amend insufficient as it was included in briefing only as an alternative form of relief and not made through formal motion).