IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SEGMENT CONSULTING MANAGEMENT, LTD., a British Columbia, Canada Company; and LIGHTHOUSE ENTERPRISES, INC., a Barbados Company,<br><br>Plaintiffs,<br><br>v.<br><br>STREAMLINE MANUFACTURING, LLC, a Utah Limited Liability Company; JOHN A. DURLING, an Individual; PATRICK A. CALL, an Individual; MATTHEW A. ASAY, an Individual; BIG BOSS WHOLESALE AND NOVELTIES LLC, a Texas Limited Liability Company; and ZEESHAN SYED, an Individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br><br>Case No. 2:19-CV-933 TS–EJF<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction by Defendants Big Boss Wholesale and Novelties, LLC ("Big Boss") and Zeeshan Syed ("Mr. Syed") (collectively "Texas Defendants"). For the reasons stated below, the Court will grant the Motion.

I.  BACKGROUND

Segment Consulting Management, Ltd ("Segment") owns the intellectual property of the botanical product VivaZen.[1] Streamline Manufacturing, LLC ("Streamline") and Segment began doing business together when Segment asked Streamline to take raw ingredients purchased by Segment, mix the ingredients, bottle the resulting mix, and label the bottles to produce a finished

---

[1] *See* Docket No. 32-3 ¶ 1.

VivaZen product Segment could ship to its distributors.[2] Streamline began this process and delivered several million units of VivaZen to Segment.[3] Eventually, the parties' relationship deteriorated when they disputed the quantity of VivaZen units billed and monies owed.[4]

Not all the particulars of the parties' dispute are relevant to determine this Motion. After the parties falling out, however, Streamline retained several units of VivaZen, which it threatened to sell if it did not receive Segment's payment.[5] Thereafter, Segment learned of a video showing 20 pallets of finished VivaZen product that Big Boss was offering for sale that were not purchased from Segment.[6] Segment alleges that Big Boss purchased the pallets from Streamline and then sold a portion thereof to two other distributors.[7] Segment explains that Texas Defendants purchased VivaZen "directly or indirectly" from Streamline, and then sold that VivaZen to others after being informed of Segment's alleged property interest therein.[8] Texas Defendants adamantly deny purchasing VivaZen from Streamline or any other Utah entity.[9] Instead, Texas Defendants state that they received the VivaZen from a "third-party which directed shipment—a transaction over which Texas Defendants exercised no control."[10] Segment counters Texas Defendants' denial with an affidavit from Colin Partridge, Segment's Director of Revenue and Business Development.[11] Mr. Partridge asserts that Segment previously sold

---

[2] *See id.* ¶ 33.

[3] *See id.* ¶ 38.

[4] *See, e.g.*, *id.* ¶¶ 49–52; Docket No. 15 ¶¶ 21–23.

[5] *See* Docket No. 32-3 ¶ 58.

[6] *See id.* ¶¶ 82–83.

[7] *See id.* ¶¶ 84, 86.

[8] *See* Docket No. 35, at 7.

[9] *See* Docket No. 32-1 ¶¶ 8, 18.

[10] *See* Docket No. 38, at 7.

[11] *See* Docket No. 35-5.

VivaZen to a California company, Lab Stream Partners, LLC, but actually shipped the product directly to Big Boss.[12] Mr. Partridge then speculates that Streamline engaged in the same practice by selling VivaZen to Big Boss through Lab Stream Partners, but he offers no other proof to support this theory.[13]

Mr. Syed is Big Boss's president and CEO.[14] In Mr. Syed's affidavit, he attests that Texas Defendants have never done business or otherwise transacted or contracted with Streamline.[15] He also states that Texas Defendants lack any ties to Utah whatsoever.[16] Accordingly, Texas Defendants move to dismiss because this Court lacks personal jurisdiction.

## II. MOTION TO DISMISS STANDARD

In analyzing a motion to dismiss for lack of personal jurisdiction the plaintiff has the burden of proving jurisdiction.[17] When a motion to dismiss for lack of personal jurisdiction is brought before trial and supported by affidavits and other written materials, plaintiff need only make a prima facie jurisdictional showing.[18] Initially, "allegations of the complaint are taken as true to the extent they are not contradicted by affidavits."[19] If certain allegations, however, are "controverted by sworn affidavits" those allegations are not presumed true.[20] If the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor, and the

---

[12] *See id.* ¶ 3.

[13] *See id.* ¶ 8.

[14] *See* Docket No. 32-1 ¶ 5.

[15] *Id.* ¶¶ 8, 18.

[16] *See* Docket No. 32, at 3; Docket No. 32-1 ¶¶ 10–17.

[17] *Kuenzle v. HTM Sport–Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[18] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[19] *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij,* 710 F.2d 1449, 1454 (10th Cir. 1983).

[20] *Id.*

plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[21] The Court is free to consider matters outside the pleadings in analyzing the motion.[22]

III. ANALYSIS

Segment must prove personal jurisdiction over Texas Defendants by showing: (1) that jurisdiction is legitimate under the laws of Utah, and (2) that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.[23] Utah's long-arm statute applies "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[24] Thus, it is "helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[25]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[26] The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction. For general jurisdiction to exist, "the defendant must be conducting substantial and continuous local activity in the forum state."[27] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

---

[21] *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984).

[22] *See* FED. R. CIV. P. 12(d).

[23] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

[24] *See* Utah Code Ann. § 78B-3-201(3).

[25] *Sys. Designs, Inc. v. New Customward Co.,* 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[26] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[27] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

4

State, thus invoking the benefits and protections of its laws."[28] When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction for injuries that "arise out of or relate to those activities."[29]

The parties appear to agree that the Court lacks general jurisdiction over Texas Defendants.[30] Thus, the question becomes whether there are sufficient contacts to support specific jurisdiction. Segment asserts two bases for establishing specific jurisdiction. First, Texas Defendants "through [their] actions and inactions [are] a joint tortfeasor with Streamline, a Utah limited liability company and citizen whose tortious conduct took place in the State of Utah and first caused injury to Segment and Lighthouse."[31] "Second, facts suggest Streamline shipped [VivaZen] directly to Big Boss and that Big Boss thereby directly transacted business with Streamline in the State of Utah and injured Segment and Lighthouse accordingly."[32] These theories are treated separately below.

    A. Joint Tortfeasor

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"[33] Jurisdiction must be established as to each defendant individually.[34] "Courts have rejected asserting personal jurisdiction over defendants who retain some sort of joint liability, such as a

---

[28] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[29] *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks omitted).

[30] *See* Docket No. 38, at 2.

[31] *See* Docket No. 35, at 6.

[32] *Id.*

[33] *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[34] *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

5

partnership or joint tortfeasor liability, where some independent minimum contacts apart from the joint liability are not shown."[35] "[A] defendant's contacts with the forum State may be intertwined with his transaction or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[36] Courts have typically refused to impute contacts by an alleged tortfeasor against a joint tortfeasor because "liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum."[37]

Segment asserts jurisdiction over Texas Defendants because they are joint tortfeasors with "Streamline, a Utah limited liability company with its principal place of business in Utah County."[38] Further, Segment's "claims against Big Boss first arose from the tortious acts of a Utah Citizen—Streamline—which caused injury to Segment and Lighthouse in the State of Utah."[39] Under the principles previously set forth, the mere fact that Texas Defendants are alleged joint tortfeasors with a Utah entity is jurisdictionally insufficient. Therefore, Segment

---

[35] *See, e.g.*, *Steadfast Ins. Co. v. Pop Rest., LLC*, 4:09-CV-3148, 2010 WL 3155923, at *8 (S.D. Tex. Aug. 10, 2010) (collecting cases).

[36] *Walden*, 571 U.S. at 286; *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280–81 (10th Cir. 2016) (applying *Walden*'s principles in a tort context).

[37] *Clark v. Milam*, 830 F. Supp. 316, 325 (S.D.W. Va. 1993) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990)); *accord Simkins Corp v. Gourmet Res. Int'l*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985) ("While the rule of joint tortfeasor liability may make it economically advantageous to allow the maintenance of suit against both a corporation and its officers or directors in one court, the policy of judicial economy cannot be addressed in a vacuum. The principles of due process mandate that a court focus on the hardship of forcing a non-resident defendant to litigate in a distant forum.")

[38] *See* Docket No. 35, at 7.

[39] *See id.*

must demonstrate independent minimum contacts apart from any joint liability to prove jurisdiction.

Segment attempts to connect Texas Defendants to Utah by arguing that "the facts offered in support of each cause of action" is evidence of Texas Defendants being, "at the very least, jointly complicit in Streamline's tortuously injurious conduct . . . ."[40] Segment alleges three claims—conversion, contributory trademark infringement, and misappropriation of trade secrets—that Texas Defendants and Streamline jointly committed.[41] The factual allegations supporting these claims, however, do not show how Texas Defendants directed their actions towards Utah, engaged in intentional business relations in Utah, or targeted solicitations in Utah with the knowledge that the brunt of the injury would be felt by Utah's residents. Instead, the uncontroverted allegations indicate that Streamline manufactured VivaZen in Utah and then sold it to a third-party who sold it to Texas Defendants.[42] Receiving goods manufactured in Utah does not satisfy a minimum contacts analysis because it does not indicate that Texas Defendants initiated any contacts with Utah. In sum, Segment's jurisdiction argument fails because the mere fact of being a joint tortfeasor with a Utah entity is jurisdictionally insufficient, and Segment has not demonstrated how its allegations connect Texas Defendants to Utah.

---

[40] *Id.*

[41] *See id.*

[42] *See id.* at 9 (Segment explaining that Texas Defendants likely came into possession of VivaZen through a California entity that brokered a deal between Streamline and Texas Defendants); Docket No. 38, at 6–7 (Texas Defendants explaining that "Streamline's *actual* customer, coordinated with Streamline to ship goods to Texas Defendants" and there is "*no evidence* in[] the record which establishes that Texas Defendants solicited this shipment from Streamline; that Texas Defendants communicated in any way with Streamline; nor that Texas Defendants even knew where such goods came from").

7

B. Receiving Goods from Streamline

Segment's second jurisdictional argument is that Streamline shipped VivaZen directly to Big Boss and, therefore, Big Boss has a direct and independent relationship with the forum.[43] Texas Defendants respond by arguing that even if Segment's allegations are true, Texas Defendants did not contract with or contact Streamline, and thus a third-party, non-Utah entity directed shipment.

The Court's specific jurisdiction analysis begins by looking "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[44] Controlling law makes clear that "[a] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[45] Further, "the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."[46] The Supreme Court has made very clear that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction."[47]

Segment's argument—that Texas Defendants purposefully availed themselves to Utah by receiving goods shipped by Streamline—does not demonstrate how Texas Defendants purposefully availed themselves to Utah. Texas Defendants have no contacts with Utah except for receiving goods that were manufactured by Streamline in Utah. Based on this, Texas

---

[43] *See* Docket No. 35, at 9.

[44] *Walden*, 571 U.S. at 285.

[45] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (quoting *Walden*, 571 U.S. at 286).

[46] *Walden*, 571 U.S. at 291.

[47] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see also Walden*, 571 U.S. at 286 ("jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

Defendants could not reasonably anticipate being haled into a Utah Court, and the Court holds that minimum contacts have not been established.

## IV. CONCLUSION

It is therefore

ORDERED that Texas Defendants' Motion to Dismiss (Docket No. 32) is GRANTED.

DATED March 3, 2020

BY THE COURT:

Ted Stewart
United States District Judge